UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL DE LA CERDA,<br><br>                              Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                              Defendant. | Case No. CV 13-03512-JEM<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

**PROCEEDINGS**

On May 23, 2013, Joel De La Cerda ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits.  The Commissioner filed an Answer on September 10, 2013.  On November 11, 2013, the parties filed a Joint Stipulation ("JS").  The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be affirmed and this case dismissed with prejudice.

**BACKGROUND**

Plaintiff is a 50-year-old male who applied for Social Security Disability Insurance benefits on September 23, 2010, alleging disability beginning July 1, 2004.  (AR 16.)  The ALJ determined that Plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of July 1, 2004, through his date last insured of December 31, 2009.  (AR 18.)

Plaintiff's claim was denied initially on February 22, 2011 and on reconsideration on May 9, 2011.  (AR 16.)  Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Sally C. Reason on December 19, 2011, in West Los Angeles, California.  (AR 16)  Claimant appeared and testified at the hearing and was represented by counsel.  (AR 16.)  Medical expert ("ME") Reuben Beezy, M.D. and vocational expert ("VE") Ruth A. Arnush also appeared and testified at the hearing.  (AR 16.)

The ALJ issued an unfavorable decision on January 17, 2012.  (AR 16-26.)  The Appeals Council denied review on March 26, 2013.  (AR 4-6.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1.  Whether the ALJ erred by not crediting the opinions of Dr. Capen, Plaintiff's treating physician, especially considering these opinions related back to the date last insured.

2.  Whether the ALJ erred by not fully considering the opinions of the medical expert who testified, or delving deeper into the testimony to explore any ambiguities.

3.  Whether the ALJ's determination that Plaintiff could perform past relevant work was made against the substantial weight of the evidence, which would have supported a much more limited residual functional capacity.

4.      Whether the ALJ's credibility assessment was made in accordance with Ninth Circuit case law.

5.      Whether the Appeals Council erred by rendering a "blanket denial" and by not considering additional, pertinent exhibits.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). Residual functional capacity ("RFC") is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d

4

at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity during the period from the alleged onset date of July 1, 2004, through the date last insured of December 31, 2009.  (AR 18.)

At step two, the ALJ determined that, through the date last insured, Plaintiff had the following severe impairments: status post cervical diskectomy and fusion at C5-6 in 2007; status post arthroscopic surgery of the right shoulder in 2008; right carpal tunnel syndrome; right ulnar nerve syndrome; and cirrhosis of the liver.  (20 C.F.R. § 404.1520(c)).  (AR 18-20.)

At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  (AR 20.)

The ALJ then found that, through the date last insured, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except for the following non-exertional limitations:

> . . . no climbing on ladders, ropes, or scaffolds; no more than occasional performance of all other postural activities; no more than occasional reaching above shoulder level with the right (dominant) upper extremity; and no forceful gripping or grasping with the right (dominant) upper extremity.

(AR 21-25.)  In determining this RFC, the ALJ made an adverse credibility determination.  (AR 21.)

At step four, the ALJ found that, through the date last insured, Plaintiff was able to perform his past relevant work as an assistant supervisor as it is generally performed in the national economy.  (AR 25.)

Consequently, the ALJ found that Claimant was not disabled, within the meaning of the Social Security Act, at any time from July 1, 2004, the alleged onset date, through December 31, 2009, the date last insured.  (AR 26.)

## DISCUSSION

The ALJ decision must be affirmed.  The ALJ's RFC and past relevant work determinations are supported by substantial evidence.  The Appeals Council did not err in denying review.  The ALJ's nondisability determination is supported by substantial evidence and free of legal error.

## I.     THE ALJ'S RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff contends that the ALJ did not properly consider the medical evidence and improperly discounted his credibility.  The Court disagrees.

### A.     Relevant Federal Law Governing RFC Assessments

A RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms.  See SSR 96-5p; 20 C.F.R. § 1527(e).  In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition.  Robbins, 446 F.3d at 883.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting,

physicians).  See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

7

**B.    The ALJ Properly Considered The Medical Evidence**

Plaintiff Joel de la Cerda alleges an inability to work due to work-related injuries to his neck, back and arm suffered in 2003 when he fell through plywood and landed on the floor 6-7 feet below.  (AR 18, 19.)  He also alleges more recent damage to his liver for which he was hospitalized in June 2010.  (AR 18, 19.)  The ALJ concluded that Plaintiff who was diagnosed with cirrhosis of the liver at that time probably had some degree of liver disease six months earlier before the date last insured of December 31, 2009.  (AR 19-20.)

A major problem with Plaintiff's application is that the record contains "almost no medical evidence pre-dating Claimant's date last insured, and no medical evidence contemporaneous with his alleged work-related injuries."  (AR 18.)  Nonetheless, Plaintiff contends that medical opinions made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition.  SSR 83-20; Lester, 81 F.3d at 832; Herrera v. Barnhart, 379 F. Supp. 2d 1103, 1108 (C.D. Cal. 2005).

1.    Dr. Capen

Plaintiff contends that the ALJ erred by not crediting the November 21, 2011 opinion of Dr. Capen who opined that Plaintiff was disabled.  (AR 24-25, 367-72.)  Dr. Capen's November 21, 2011 Cervical Spine Residual Functional Capacity Questionnaire references a surgery in 2008.  (AR 372.)  It also notes that Dr. Capen had been treating Plaintiff every 4-6 weeks since 2004.  (AR 367.)  Dr. Capen diagnosed cervical spine discopathy, status post-fusion, status post arthroscopy, and lumbar spine discopathy.  (AR 367.)  He noted moderate to severe neck pain that becomes constant to severe with repetitive motions of the neck, lifting, pushing, pulling and reaching with upper extremities.  (AR 367.)  The neck pain radiates into Plaintiff's right upper extremity with numbness and tingling.  (AR 367.)  Dr. Capen concluded that Plaintiff was incapable of even a low stress job.  (AR 369.)

Plaintiff contends that disability prior to December 31, 2009 can be inferred based on Dr. Capen's November 21, 2011 disability opinion and "[i]f the ALJ had even a

question regarding when the doctor's opinions applied in light of the date last insured issue, she had a duty to make the pertinent inquiry" (JS 4:6-8), based on the ALJ's affirmative duty to fully and fairly develop the record. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001.)

Plaintiff's attempt to find evidence of disability before the date last insured, however, fails. Dr. Capen refers to Plaintiff's 2008 surgery but does not say that Plaintiff was disabled at that time because of his spinal and upper extremity impairments. (AR 372.) The only medical evidence of the surgery in the record also does not say that Plaintiff was disabled. (AR 175-176.) Much closer to the date last insured, Dr. Capen on March 23, 2010 gave an opinion that Plaintiff was capable of returning to "desk work or supervisory work only" (AR 24, 218), consistent with the ALJ's conclusions. Dr. Capen also indicated the Claimant should avoid repetitive motions of the head and neck, lifting, pushing or pulling greater than 10 pounds, overhead activities and activities involving the right upper extremity above shoulder level. (AR 24, 218.) Some of these restrictions are consistent with the ALJ's conclusions. (AR 24.) To the extent that Dr. Capen's March 23, 2010 assessment is more restrictive, the ALJ gave it less weight because it does not clearly relate back to the period before December 31, 2009 and because it is contradicted by the medical expert's opinion (AR 23-24) and the opinions of two State agency reviewing physicians in 2001 that there was insufficient evidence to establish disability as of the date last insured. (AR 24-25.) <u>Again, however, even with the restrictions he imposed, Dr. Capen opined Plaintiff could work in March, 2010. (AR 24, 218.) Plaintiff does not address or mention this March 23, 2010 opinion of Dr. Capen or explain why it should not relate back to the December 31, 2009 date last insured only a few months earlier</u>.

Plaintiff's primary argument, however, is that disability can be inferred form Dr. Capen's November 21, 2011 opinion and, if not, the ALJ had a duty to recontact Dr. Capen and inquire whether his opinion of disability related back to December 31,

1  2009.  In addressing Plaintiff's argument, the Court notes the guidance provided in SSR

2  83-20:

3        In some cases, it may be possible <u>based on the medical evidence</u>

4      to reasonably infer that the onset of a disabling impairment(s) occurred

5      some time prior to the date of the first recorded medical examination . .

6      .  How long the disease may be determined to have existed at a disabling

7      level of severity depends on an informed judgment of the facts in a

8      particular case.  <u>This judgment, however, must have a legitimate medical</u>

9      <u>basis</u>.  At the hearing, the administrative law judge should call on the

10      services of a medical advisor when onset must be inferred.

11  (Emphasis added.)

12       The ALJ gave Dr. Capen's November 21, 2011 report relatively little probative

13  weight because it was provided nearly two years after the Claimant's date last insured

14  and was not retrospective in its assessment of Plaintiff's RFC.  (AR 24.)  Additionally, as

15  already noted, in March 2010 Dr. Capen indicated Plaintiff remained capable of working

16  (AR 24, 218), a finding Plaintiff never discusses or mentions.  The ALJ, moreover, did

17  just what SSR 83-20 recommends.  She employed the services of a medical expert, Dr.

18  Reuben Beezy, who testified that Claimant's impairments did not meet or equal any

19  Listings and that he could do light work[1] with right arm reaching and right hand gripping

20  restrictions adopted by the ALJ in her RFC.[2]  (AR 23-24, 45-46.)  Also, two State

21  reviewing physicians in early 2011 (before Dr. Capen's November 2011 report) found

22  insufficient evidence of any limitations that would be disabling.

23  

24     [1]  There is a typographical error in the hearing transcript.  Dr. Beezy is quoted as saying "he

25  would meet the right listing."  (AR 46.)  The Commissioner notes that "right" should be "light," and Claimant does not dispute it should be "light."

26     [2]  Plaintiff complains that Dr. Beezy did not have the benefit of Dr. Capen's November 21,

27  2011 RFC (AR 38) but this fact is of no consequence because the ALJ found the report was not retrospective and Dr. Capen in March 2010 had found Plaintiff capable of working.  (AR 24, 218.)

28  Dr. Beezy did review Dr. Capen's March 2010 opinion.  (AR 41.)

Plaintiff argues that Dr. Capen, because he has treated Plaintiff since 2004, was qualified to render a relation-back medical opinion and the ALJ failed to develop the record properly by not re-contacting him. Tonapetyan, 242 F.3d at 1150. Yet the ALJ's duty to develop the record is only triggered where the evidence is ambiguous or by the ALJ's own finding that the record is inadequate. Id. Here, Dr. Capen's November 21, 2011 assessment is not ambiguous because it is not retrospective. Nor did the ALJ have any duty to recontact Dr. Capen and solicit a relation-back opinion because Dr. Capen already opined in March 2010 that Plaintiff remained able to work and because the ALJ had the opinions of Dr. Beezy and the two State reviewing physicians. The record was neither ambiguous nor inadequate, and consequently there was no duty to re-contact Dr. Capen or to develop the record further.

Thus, the ALJ's conclusion that there was insufficient medical evidence of record prior to the date last insured to establish disability is supported by substantial evidence. The ALJ has the responsibility for resolving conflicts in the medical evidence. Andrews, 53 F.3d at 1039. Where the ALJ's interpretation of the medical evidence is reasonable as it is here, it should not be second-guessed. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ's decision to accord Dr. Capen's opinion relatively limited probative weight is supported by specific, legitimate reasons supported by substantial evidence.

### 2. Dr. Beezy

Plaintiff contends that the medical expert's testimony supports a finding that his cirrhosis and other physical maladies were of listing level severity prior to his date last insured or at least created an ambiguity that the ALJ should have pursued further. The Court disagrees.

Dr. Beezy testified that Plaintiff's main problem occurred after 2009 when he entered the hospital in June 2010 for what proved to be cirrhosis of the liver. (AR 42.) He did say, however, that liver cirrhosis takes "a long, long time to develop" and December 2009 would not be unreasonable to be included as an onset of his liver

cirrhosis.  (AR 43.)  Dr. Beezy then agreed with the ALJ that there was no evidence prior to the date last insured that he met the 5.05 Listing, "You're absolutely right.  I cannot argue the point.  But he doesn't meet the listing as of December 2009."  (AR 45.)

On questioning by Plaintiff's counsel, Dr. Breezy responded as follows:

> Q: So, my concern would be whether or not you could infer back to December 2009 that perhaps his cirrhosis was of such significance that he might have equaled the listing at that point in time.

> A: I - that would just be conjecture on my part.  I couldn't establish that with any degree of finality.  It would just be a guess, and I can't make that guess.

(AR 47.)  The attorney then asked Dr. Beezy if, considering his physical impairments in combination with the cirrhosis, Plaintiff met or equaled a listing.  Dr. Beezy's response was, "My answer is I could not say that it would meet a listing or equal it."  (AR 48.)

The ALJ's findings are entirely consistent with Dr. Beezy's testimony.  The ALJ determined that the medical evidence does not show that Claimant had any liver-related problems before the date last insured.  (AR 19.)  Plaintiff never disputes or responds to this critical finding.  The ALJ did conclude that Plaintiff probably had some degree of liver disease by the date last insured that did significantly limit his ability to work before that date, but did not satisfy the severity requirements of Listing 5.05 as of the date last insured.  (AR 20.)  The ALJ specifically noted that Dr. Beezy testified that any finding of listing level liver disease as of the date last insured would require undue conjecture, and that her finding of no listing level impairments through the date last insured is fully supported by Dr. Beezy and all other medical opinions.  (AR 20.)

The Court can find no inaccuracy in the ALJ findings, nor ambiguity in Dr. Beezy's testimony.  Plaintiff's assertion that the medical expert "had to admit that Plaintiff's condition likely met or equaled a listing level impairment leading up to the last day insured" is plainly contradicted by Dr. Beezy's responses to Plaintiff's counsel's

questions.  Exactly as the ALJ found, Dr. Beezy stated that liver disease was present by December 2009 but did not meet listing level severity.  (AR 48.)

Plaintiff essentially disagrees with the ALJ's interpretation of Dr. Beezy's testimony but it is the ALJ's responsibility to resolve ambiguities in the medical evidence. Andrews, 53 F.3d at 1039.  Where the ALJ's interpretation of the medical evidence is reasonable as it is here, it should not be second-guessed.  Rollins, 261 F.3d at 857.

The ALJ did not err in her consideration of Dr. Beezy's testimony.

### C.     The ALJ's Adverse Credibility Determination Is Supported By Substantial Evidence

Plaintiff contends that the ALJ improperly discounted his credibility.  The Court disagrees.

### 1.     Relevant Federal Law Regarding Credibility

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 esp. n.2.  The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence.  Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  If the ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion."  Bunnell, 947 F.2d at 345.  The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  Thomas, 278 F.3d at 958; see also Rollins, 261 F.3d at 856-57; Bunnell, 947 F.2d at 345-46.  Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so."  Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722.  The ALJ

1    must identify what testimony is not credible and what evidence discredits the testimony.

2    Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

3            2.    Analysis

4           In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically

5    determinable severe impairments reasonably could be expected to cause his alleged

6    symptoms.  (AR 21.)  The ALJ, however, also found that Plaintiff's statements regarding

7    the intensity, persistence and limiting effects of these symptoms were not credible to the

8    extent inconsistent with the RFC assessed by the ALJ.  (AR 21.)  Because the ALJ did

9    not make a finding of malingering, she was required to provide clear and convincing

10   reasons supported by substantial evidence to discount Plaintiff's credibility.  Smolen, 80

11   F.3d at 1283-84.  The ALJ did so.

12          First, the ALJ found that the medical evidence does not support any greater

13   limitations than those set forth in the RFC she assessed.  (AR 21.)  An ALJ is entitled to

14   consider whether there is a lack of medical evidence to corroborate a claimant's alleged

15   pain symptoms so long as it is not the only reason for discounting a claimant's credibility.

16   Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005).  Here, the ALJ reiterated that

17   the record contains almost no medical evidence pre-dating the date last insured.  (AR

18   21.)  The ALJ also found that, to the extent medical evidence showed a recent

19   worsening of Plaintiff's orthopedic impairments, such a worsening suggests his condition

20   was less restrictive as of the date last insured.  (AR 22.)  With regard to liver disease,

21   the ALJ found that, even though it was present as of the date last insured, "his more

22   serious symptoms admittedly were not present until at least several months after the

23   date last insured."  (AR 23.)  The ALJ specifically found that prior to June 2010 "the

24   claimant's cirrhosis-related symptoms, if any, would not have interfered with his

25   performance of the range of light work identified in the above residual functional

26   capacity."  (AR 23.)  Dr. Beezy testified that neither Claimant's cirrhosis or the

27   combination of cirrhosis and physical impairments were of listing level severity as of the

28   date last insured.  (AR 47-48.)  He assessed a light work RFC with limitations.  (AR 45-

46.)  State agency reviewing physicians found insufficient evidence of a disabling medical condition as of the date last insured.  (AR 25.)

Plaintiff's only response to all of the above medical evidence is to challenge the ALJ's refusal to credit Dr. Capen's report, that the ALJ was unable to ascertain if his opinion is retrospective and the ALJ should have re-contacted Dr. Capen.  (JS 13.)  The Court already has rejected Plaintiff's contention that the ALJ erred in considering Dr. Capen's opinion.  In his reply, Plaintiff repeats his argument that he had liver disease by the time of the date last insured (which the ALJ found was true), and also repeats his misstatement that Dr. Beezy found that listing level impairments existed at the time of the date last insured.  The ALJ's finding that the medical evidence does not support greater limitations than those assessed in her RFC is supported by substantial evidence.

Second, the ALJ found that Claimant's lack of treatment in 2009 suggests that his condition was less bothersome as of the date last insured than it was thereafter.  (AR 22.)  An ALJ is permitted to consider lack of treatment in his or her credibility determination.  Burch, 400 F.3d at 681.  Plaintiff makes no attempt to explain his lack of treatment in 2009 or to challenge this reason given by the ALJ for discounting Plaintiff's credibility.

Third, the ALJ made specific findings of inconsistent statements on the part of Claimant, which are a valid basis for discounting credibility.  Light v. Soc. Sec. Adm., 119 F.3d 789, 792 (9th Cir. 1997).  Here, the ALJ noted that Plaintiff claimed at the hearing to have stopped drinking but medical records indicated otherwise and he told two doctors in 2011 he was still drinking.  (AR 22-23); see Thomas, 278 F.3d at 958-59 (conflicting statements concerning drug and alcohol abuse were substantial evidence supporting the ALJ's negative conclusions about Claimant's veracity).  The ALJ also indicated that Plaintiff claimed at the hearing that his medications caused adverse side effects but medical records not only do not corroborate his complaints but indicate his doctors attributed those complaints to alcohol abuse.  (AR 23.)  The ALJ further

indicated Plaintiff's complaints of fatigue were not supported by medical records.  (AR 23.)  Plaintiff does not respond to any of these inconsistencies identified by the ALJ.

The ALJ discounted Plaintiff's subjective symptom testimony for clear and convincing reasons supported by substantial evidence.

\* \* \*

The ALJ's RFC is supported by substantial evidence.

### D.    The ALJ's Past Relevant Work Determination Is Supported By Substantial Evidence

Plaintiff contends that the ALJ's past relevant work ("PRW") determination that he can perform his prior assistant supervisor job is not supported by substantial evidence.  Plaintiff contends that the ALJ's RFC conflicts with Dr. Beezy's testimony, the hypothetical presented to the VE did not contain the limitations assessed by Dr. Beezy and the ALJ failed to inquire of the VE if her testimony varied from the Dictionary of Occupational Titles ("DOT").  The Court disagrees.  The ALJ's RFC and PRW determinations are supported by substantial evidence, and any error by the ALJ was harmless.

### 1.    Relevant Federal Law

A claimant has the burden of proving that he or she no longer can perform past relevant work ("PRW").  Pinto, 249 F.3d at 844.  The ALJ, however, has a duty to make the requisite factual findings to support his conclusion on PRW.  Id.  This is done by examining a claimant's RFC and the physical and mental demands of the claimant's PRW.  Id. at 844-45.

A claimant must be able to perform:  (1) the functional demands and job duties of a particular past relevant job as he or she actually performed it, or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61; Pinto, 249 F.3d at 845.  In making this determination, the ALJ must make the following findings of fact:

1.    A finding of fact as to the individual's RFC.

2.    A finding of fact as to the physical and mental demands of the
      past job/occupation.

3.    A finding of fact that the individual's RFC would permit a return
      to his or her past job or occupation.

SSR 82-62.  Past work experience "must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability" to perform the functional activities of past work.  Id.  The ALJ's decision "must be developed and explained fully in the disability decision."  Id.

Social Security regulations advise the ALJ to consider first whether the individual still can do PRW as he or she actually performed it because individual jobs within a category may not entail all of the requirements of a job in that category set forth in the DOT.  SSR 96-8p; Pinto, 249 F.3d at 845.  The claimant is an important source of information about his or her PRW.  SSR 82-41; Pinto, id.  Other sources of information that may be consulted include vocational expert ("VE") testimony and the DOT.  20 C.F.R. §§ 404.1560 (b)(2) and 416.960 (b)(2); SSR 82-61.

The ALJ then can proceed to determine whether a claimant can perform his or her PRW as generally performed.  Id.  Typically, the best source of how a job is generally performed in the national economy is the DOT.  Id.  An ALJ may accept vocational expert testimony that varies from the DOT, but the record must contain "persuasive evidence to support the deviation."  Id. at 846 (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).  The ALJ has an affirmative responsibility to ask whether a conflict exists between a VE's testimony and the DOT.  SSR 00-4p; Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  If there is a conflict, the ALJ must obtain a reasonable explanation for the conflict and then must decide whether to rely on the VE or DOT.  Id.; Massachi, 486 F.3d at 1153.  Failure to do so, however, can be harmless error where there is no conflict or the VE provides sufficient support to justify variation from DOT.  Id. at 1154 n.19.

/ / /

2.    Analysis

Plaintiff's assertion that Dr. Beezy's testimony limited Plaintiff to sedentary work is inaccurate.  As already explained, there was a typographical error in the transcript. Supra, p. 10 fn. 1.  Dr. Beezy stated that Plaintiff had trouble lifting 20 pounds, not that he could not do so, and concluded that he would meet the "right [light]" listing, i.e., he could do light work.  (AR 46, 23.)  Consistent with Dr. Beezy's testimony, the hypothetical to the VE specified a light work RFC.  (AR 58-59.)  There was no inconsistency between Dr. Beezy's testimony and either the hypothetical to the VE or the light work RFC assessed by the ALJ.  (AR 20, 25.)

Dr. Beezy also testified that Plaintiff would have limitations to only occasional over the shoulder reaching with both arms.  (AR 46.)  The VE testified that the assistant supervisor job (DOT 869.367-010) was classified as light work, generally and as he performed it.  (AR 59.)  The ALJ's hypothetical included limitations to light work, no forceful gripping, grasping or torquing with the right upper extremity and only occasional over the shoulder reaching activities with the right upper extremity.  (AR 59.)  The VE opined that Plaintiff could perform the job of assistant supervisor.  (AR 59.)

The Commissioner concedes that the ALJ erred in only including in her hypothetical to the VE an over the shoulder reaching limitation for the right arm.  Dr. Beezy testified that limitation applied to both arms.  (AR 46.)  The ALJ's RFC also includes an over the shoulder reaching limitation only for the right arm.  The Commissioner, however, notes that there is nothing in the DOT job description specifying frequent reaching is above shoulder level, and the finding that Plaintiff can perform the job of assistant supervisor is thus not in conflict with Dr. Beezy's testimony. The ALJ's error in failing to include in his hypothetical to the VE and in his RFC an over the shoulder reaching limitation for both arms is harmless, therefore.  Stout v. Commissioner, 454 F.3d 1050, 1055-56 (9th Cir. 2006).  So was the failure of the ALJ to inquire of the VE whether her testimony varied from the DOT.  There was no variance or conflict between her testimony and the DOT.  Massachi, 486 F.3d at 1154 n.19.

The ALJ's PRW determination is supported by substantial evidence and any error in the ALJ's RFC or in the hypothetical to the VE regarding the over the shoulder reaching limitation is harmless.

### E.    The Appeals Council Did Not Err In Denying Review

Plaintiff contends that the Appeals Council erred in not associating with Plaintiff's file additional medical records submitted to it after the ALJ decision that it considered. The Court disagrees.

In denying review, the Appeals Council disclosed that it looked at additional medical records from Dr. Capen dated February 9, 2010 through January 31, 2012, Valley Presbyterian Hospital dated June 26, 2010 through June 30, 2010 and Olive View UCLA Medical Center dated July 21, 2010 through November 23, 2011.  (AR 5.)  The Appeals Council observed that the ALJ decided Plaintiff's case through December 31, 2009, the date last insured.  (AR 5.)  It concluded that the new medical records were about a later time and thus did not affect the decision about whether Plaintiff was disabled at the time Plaintiff was last insured.  (AR 5.)

Plaintiff argues that the Appeals Council erred in not incorporating the new medical records into the administrative record so as to permit District Court review of the Council's decision that the records need not be considered.  The Ninth Circuit in Brewes v. Commissioner of Soc. Sec. Adm., 682 F.3d 1157, 1162 (9th Cir. 2012), however, specifically held that Social Security regulations permit claimants to submit new and material evidence to the Appeals Council and "require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." (Emphasis added.)  The Ninth Circuit specifically cited and relied on 20 C.F.R. § 404.970(b) which provides:

> If new and material evidence is submitted, the Appeals Council
> shall consider the additional evidence only where it relates to the
> period on or before the date of the administrative law judge hearing

19

1    decision.  The Appeals Council shall evaluate the entire record
2    including the new and material evidence submitted if it relates to the
3    period on or before the date of the administrative law judge hearing
4    decision.  It will then review the case if it finds that the administrative
5    law judge's action, findings, or conclusion is contrary to the weight of
6    the evidence currently of record.

7    (Emphasis added.)  The Ninth Circuit held that where the Appeals Council is required to

8    review the new evidence, this new evidence must be treated as part of the administrative

9    record.  Brewes, 682 F.3d at 1162 (citing Perez v. Chater, 77 F.3d 41, 45 (2d Cir.

10   1996)).

11       Plaintiff's error contention fails for several reasons.  First, the regulation

12   specifically conditions consideration of new evidence on a determination by the Appeals

13   Council that it is "material."  Here the Appeals Council determined that the new medical

14   records were not material because they are dated after the date last insured.  Plaintiff

15   complains that failing to incorporate the new medical evidence into the administrative

16   record was error but new evidence is only required to be incorporated into the record if it

17   is material and the Appeals Council considered it in denying review.  Here, the Council

18   determined that the new evidence was not material and did not consider it in denying

19   review of the ALJ's decision.  Thus, there was no error in not incorporating the new

20   evidence in the administrative record.

21       Plaintiff complains that not incorporating the new evidence into the administrative

22   record precludes review of the Appeals Council's determination not to consider the new

23   evidence.  Yet nothing prevented Plaintiff from attaching the new medical evidence to

24   the Joint Stipulation and pointing out how that evidence would result in a finding of

25   disability.  Indeed, Plaintiff never contends that Dr. Capen's new records or the other

26   records offer retrospective opinions about whether Plaintiff was disabled on or before

27   December 31, 2009, the date last insured.  The Court also finds compelling that

28   Dr. Capen found Plaintiff capable of returning to work on March 23, 2010 (AR 24, 218),

1 an opinion rendered after the February 9, 2010 medical records cited by Plaintiff.

2 Plaintiff's failure to acknowledge and discuss Dr. Capen's March 23, 2010 nondisability

3 opinion is fatal to Claimant's argument.  Plaintiff has presented no basis at all that the

4 new information is material and should have been considered in determining whether

5 review should be granted.

6      Second, Plaintiff seizes on the language in <u>Brewes</u> and in 20 C.F.R. § 404.970(b)

7 that the Council must consider new evidence so long as the evidence relates to the

8 period "on or before" the ALJ decision.  Plaintiff contends that the new evidence cited by

9 the Appeals Council relates to the period before the January 17, 2012 ALJ decision.

10 The "on or before" language, however, is not inconsistent with the materiality condition

11 discussed above.

12      Third, Plaintiff's reliance on <u>Brewes</u> is misplaced.  In <u>Brewes</u>, the Appeals Council

13 incorporated new evidence into the administrative record and considered that evidence

14 in denying review.  682 F.3d at 1161.  The District Court in <u>Brewes</u> refused to consider

15 the new evidence submitted to the Appeals Council.  <u>Id.</u>  The Ninth Circuit reversed the

16 District Court decision not to review the new medical evidence and reversed the

17 nondisability decision of the ALJ and the District Court, after considering the new

18 evidence.  The case stands for the proposition that, where the Appeals Council

19 considers new evidence in denying review, the District Court is required to consider it as

20 well.  Here, of course, the Appeals Council did not consider the new evidence because it

21 was not material, and thus was not required to incorporate it into the administrative

22 record or to consider it when deciding to grant or deny review.

23      Plaintiff has failed to demonstrate that new medical evidence submitted to the

24 Appeals Council after the ALJ decision is "material."  Thus, the Appeals Council did not

25 err in its treatment of the new evidence.

26                         * * *

27      The ALJ's nondisability determination is supported by substantial evidence and

28 free of legal error.  The Appeals Council did not err in denying review.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this case with prejudice.

DATED: January 22, 2014                          _____/s/ John E. McDermott_____
                                                                         JOHN E. MCDERMOTT
                                                                         UNITED STATES MAGISTRATE JUDGE